UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| SHOE-BAR RANCH, INC. and § | | |
| PATSY WARD, AS TRUSTEE OF THE § | | |
| EIDSON TRUST, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | Case No. 7:17-cv-00210-DC | |
| § | | |
| PREFERRED PROPPANTS, LLC, § | | |
| § | | |
| Defendant. § | | |

**PLAINTIFFS SHOE BAR RANCH, INC. AND PATSY WARD,
AS TRUSTEE OF THE EIDSON TRUST'S RESPONSE TO DEFENDANT
PREFERRED PROPPANTS, LLC'S MOTION TO EXCLUDE
WILLIAM B. BURFORD'S EXPERT REPORT AND TESTIMONY**

Plaintiffs Shoe Bar Ranch, Inc. and Patsy Ward, as Trustee of the Eidson Trust (collectively "Shoe Bar") file this Response to Defendant's ("Preferred") Motion to Exclude William B. Burford's Expert Report and Testimony as follows:

**I.   INTRODUCTION**

To determine whether a wholesale exclusion of Mr. Burford's testimony is appropriate requires context. Like Defendant's experts, he is an experienced licensed attorney. His primary expertise is in title examination. Defendant's Motion does not challenge Mr. Burford's qualifications.

Defendant raises two issues that Shoe Bar does not dispute. First, expert reports are inadmissible hearsay because they are out-of-court statements offered to prove the truth of the matter asserted.[1] Shoe Bar will not offer at trial Mr. Burford's report and intends to object if Defendant offers its expert reports. Second, Shoe Bar recognizes that Mr Burford cannot usurp

---

[1] *See* FED. R. EVID. 801(C).

the Court's function and instruct the jury on the law or give pure legal opinions. Both of these concepts are firmly established in the case law. These aspects of Defendant's Motion are moot.

With the two broad exclusions above, the issue is then presented whether there is anything that Mr. Burford can present that assists the trier of fact in understanding the evidence or aids the jury in determining a fact in issue.[2] Shoe Bar suggests that the Court can best fulfill its gatekeeper function with Mr. Burford on the witness stand and as questions are asked. At a minimum, he should be allowed to rebut the opinion testimony of Defendant's experts and offer testimony on fact questions to be submitted to the jury.

In support of this Response, Shoe Bar relies on the following evidence in the attached exhibits:

## II. BACKGROUND

### A. It is Undisputed that Shoe Bar Owns the Surface Estate of Shoe Bar Ranch

Patsy Eidson Ward provided the history of the surface ownership in her deposition. Ex. 3. From 1919 to 1929, Millard Eidson and John Scharbauer bought and assembled the Shoe Bar Ranch from numerous people. *Id.* at 6-7. In 1929, Millard Eidson bought out John Scharbauer and ran the ranch as an independent owner until his death in 1966, at which time his only son, Scharbauer Eidson, inherited Shoe Bar Ranch. *Id.* Mrs. Ward's grandfather and father worked as cowboys for Scharbauer Eidson on the Shoe Bar Ranch. *Id.*

Prior to his death in 1973, Scharbauer Eidson incorporated Shoe Bar, conveying the surface estate only of Shoe Bar Ranch into the corporation. *Id.* at 8, 43. Upon Scharbauer Eidson's death in 1973, the stock in Shoe Bar passed to Robert Boyce Eidson, Patsy Eidson Ward's father. *Id.* at 8. During his lifetime, Robert Boyce Eidson began giving the stock of Shoe Bar Ranch, Inc. to

---
[2] FED. R. EVID. 702.

his daughters so that by the date of his death they owned the stock that Robert Boyce Eidson inherited from Scharbauer Eidson. *Id.* The remaining two shares of stock of Shoe Bar Ranch, Inc. are owned by Plaintiff, the Eidson Trust. *Id.* at 8, 9. So for almost 100 years, an "Eidson" has owned Shoe Bar Ranch either directly or indirectly through stock ownership in Shoe Bar Ranch, Inc.

Defendant's expert, Kevin Beiter, agrees that Shoe Bar owns the surface estate of Shoe Bar Ranch. Ex. 4. Mr. Beiter is an attorney admitted to practice in 1984 and currently works with McGinnis Lochridge in Austin "practicing anything to do with oil and gas." *Id.* at 5. Mr. Beiter was hired by Defendant in early 2017 to review land titles. *Id.* at 5, 6. He put forth the "land team" including landman, petroleum engineers, and coordinated with the surveyor to examine title to Shoe Bar Ranch as described in his deposition. *Id.* at 9 – 14. Mr. Beiter's conclusion with respect to Shoe Bar Ranch was as follows:

> Q: Does Shoe Bar Ranch, Inc. own the surface estate of the Shoe Bar Ranch?
>
> A: That appears to be the case, yeah. *Id.* at 9.

Mr. Beiter also examined the ad valorum tax rolls as well and identified no one other than Shoe Bar that had paid taxes on the surface estate for the last 20 years. *Id.* at 14 – 15. He didn't see "anyone else claiming the right to the property by payment of tax certainly over a significant period of time." *Id.* at 16. After describing two small tracts (10 acres and 50 acres) that were excluded from the final survey, Mr. Beiter testified as follows:

> Q: Other than those two instances, can you think of anything that is in the survey, the surface title, that's not owned by Shoe Bar and the Eidson Trust?
>
> A: I can't think of any, no. *Id.* at 39 – 40.

Defendant's other expert, J. Bushnell Nielsen, also agrees that Shoe Bar owns the surface estate of Shoe Bar Ranch. Ex. 5 at 41 – 42. Shoe Bar was to convey the surface estate only to

Defendant, which is what it owned. *Id*. at 23. Mr. Nielsen's report states that Shoe Bar owns the surface estate "of about 25,500 acres of the ranch." *Id*.at 41. His report further states "Shoe Bar owns the surface estate only." *Id*. at 42. Mr. Nielsen bases his assumptions of surface ownership on the insurance commitments he reviewed, but he did not have copies of the vesting deeds. *Id*. at 41.

There is nothing wrong with Mr. Nielsen making the assumption that Shoe Bar owns the surface estate of the ranch as outlined above. As Patsy Eidson Ward explained, someone named "Eidson" has owned (directly or through Shoe Bar) the surface estate of Shoe Bar Ranch for almost 100 years.

Mr. Beiter confirmed this with his title examination which is consistent with the tax rolls. It is undisputed. Why then can't Mr. Burford also assume Shoe Bar's ownership of the surface estate? He can because it is undisputed.

### B. Shoe Bar has Never Owned Any of the Mineral Estate of Shoe Bar Ranch

As Mrs. Ward explained in her deposition, Shoe Bar has never owned any mineral interest in Shoe Bar Ranch and has never signed an oil and gas lease. Ex. 3 at 43. The surface estate only was transferred into the corporation in 1970. *Id*. Mrs. Ward has worked for Shoe Bar since 1976. *Id*. at 45.

### C. The Contract at Issue Expressly and Unambiguously Involves a Purchase and Sale of the Surface Estate Only of Shoe Bar Ranch

Under the Farm and Ranch Contract, the land being sold is described as "25,572.35 acres, more or less, as described in ATTACHED EXHIBIT A."[3] The heading of EXHIBIT A provides as follows:

---

[3] Exhibit 1 – Farm and Ranch Contract.

EXHIBIT A
Shoe Bar Ranch Legal Description
Surface Estate Only.

Following the heading, the various sections, blocks and surveys comprising the 25-thousand plus acres are listed. The parties did not stop there. In EXHIBIT B – SPECIAL PROVISIONS ADDENDUM, paragraph 2, Shoe Bar reserved the mineral estate. Ex. 1. So Shoe Bar contracted to sell the surface estate only and reserved the mineral estate, which it did not own adding "belts and suspenders" to a surface estate only contract.

### D. **Shoe Bar, as Owner of the Surface Estate, Owned the Sand on Shoe Bar Ranch**

The parties to the Farm and Ranch Contract agreed that sand was an attribute of the surface estate in the following language:

> Buyer and Seller agree and stipulate that sand, crushed rock and gravel are attributes of the surface estate and Sellers will not claim that sand, crushed rock and gravel are attributes of the mineral estate. EX 1 – Special Provisions Addendum, paragraph 11.

In Texas, even without this contractual provision, sand belongs to the surface owner as a matter of law. *Gifford-Hill & Co., Inc. v. Wise County Appraisal Dist.*, 827 S.W. 2d 811, 815 n.6 (Tex. 1991), as amended on rehearing in part (April 22, 1992).

### III. RESPONSE TO OBJECTIONS

This case presents a unique set of issues for trial. These issues spring from a core of undisputed facts as follows:

- The parties signed a Farm and Ranch Sales Contract involving the surface estate only of Shoe Bar Ranch.
- Defendant could object if Shoe Bar did not have title to the surface estate, including the frac sand resources, or if there was something in the title that prohibited ranching, farming, hunting, sand mining, gravel mining, or rock mining.
- Defendant contends that its written objections excuse it from performing under the contract and accordingly termination of the contract was appropriate.
- Defendant's objections all involve the existence of oil and gas leases.

- Shoe Bar contends that none of Defendant's objections are reasonable and valid and therefore, Defendant breached the contract by giving notice of termination and refusing to close.

There is a unique blend of the law and facts that has to be evaluated. The disputed facts have to be evaluated under the law. How does the jury know whether Defendant's objections to title are valid or reasonable? At the end of the day, there are very few documents that inform the outcome of this case. The parties' contract, the objections to title, the responses to the objections, the cure documents provided, and the contractual permitted exceptions inform the outcome. Attached as Exhibit 6 is the report prepared by Mr. Burford. It was attached as Exhibit 1 to Defendant's Motion. Given the scope of the issues presented in determining whether or not a breach of contract occurred, there really are ten documents, as listed in Mr. Burford's report that determine the core of the fact and law issues presented in this case. As addressed in Mr. Burford's report, there are two core issues as follows:

1. Were Defendant's objections any good?
2. Would a reasonable person determine that Shoe Bar did not have good title and the ability to convey the frac sand resources on the ranch?

To organize the presentation of the case to a jury and to focus the jury on the breach of contract question at issue, the Court must instruct the jury on the law. There are those cases where the Court needs to instruct the jury on undisputed and well-established legal principles prior to the presentation of evidence. Here the jury should be informed of the following:

- Parties to a contract are presumed to know existing law.
- The mineral estate is the dominate estate which means that the mineral owner has the right to <u>use</u> the surface estate as reasonably necessary to produce the minerals.
- The right to use the surface estate is not considered an ownership interest in the title to the surface estate.
- The mineral owner in exercising the right to use the surface estate must accommodate the surface owner.
- Once there has been a division of the surface estate from the mineral estate, the mineral owner cannot burden the surface estate with restrictions in excess of the reasonable right to use provided above.

Shoe Bar incorporates by reference its response to Defendant's Renewed and Supplemental Motion for Summary Judgment which is being filed today. Defendants also incorporate by reference Exhibits 7 through 12 attached hereto. Theses exhibits are the correspondence between the parties' counsel plus one letter from Ector County Abstract & Title Co., Inc. The Amendment to the Farm and Ranch Contract provides that Defendant was required to object by September 1, 2017 or the objections are waived. Ex. 2, 6.D. Exhibit 7 is Defendant's September 1, 2017 letter.

### A. Mr. Burford's Opinion Testimony is Reliable Under Federal Rule of Evidence 702

Defendants first contend that Mr. Burford's opinions are not reliable because he relied on the assumptions stated in his report. The first assumption was that Shoe Bar owned the title to the surface estate of Shoe Bar Ranch. This assumption is reliable because it is undisputed and admitted by Defendant. This evidence will be presented before Mr. Burford testifies. Mr. Burford admits he did not do a title opinion on the ranch, but that was outside the scope of his assignment.

Next, Mr. Burford was asked whether the severance documents (when the surface estate and mineral estate was divided) could "potentially" determine rights. He admitted they could and admitted he had not reviewed them. But Defendant's objection does not raise this issue. Ex. 7. Therefore, even if there was an issue, and there is not, any such objection is waived. Ex. 2, 6.D.

Mr. Burford should not be excluded for relying on two assumptions that are not at issue and are undisputed. There is nothing unreliable about that.

### B. Legal Opinions

Defendant next seeks to exclude Mr. Burford's "legal opinions." As Shoe Bar admitted earlier, pure legal opinions are not admissible. As the Fifth Circuit has held, opinions on inadequately explored legal criteria are inadmissible. *Brazos Pines Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006). But a witness can review parts of a contract as background or

PLAINTIFFS SHOE-BAR RANCH, INC. AND PATSY WARD, AS TRUSTEE OF THE EIDSON TRUST'S RESPONSE     PAGE 7
TO DEFENDANT'S MOTION TO EXCLUDE WILLIAM B. BURFORD'S EXPERT REPORT AND TESTIMONY

foundation and testify to whether there was performance under the contract (*i.e.*, whether a breach occurred), which is an ultimate issue for the jury and to which a witness can testify under Federal Rules of Evidence 704(a). *Id.*

As explained in Shoe Bar's response to Defendant's Renewed and Supplemental Motion for Summary Judgment, there are fact issues to be resolved by the jury. As the Brazos River Authority case explains, it depends on how the questions are phrased as to whether or not the evidence is admissible. One example is the reasonableness of Defendant's objections. The Court cannot determine on this record and with Defendant's motion that Mr. Burford should be excluded from offering any opinion relating to Defendant's performance or lack thereof.

### C. Good Faith

As explained in the Brazos River Authority case, the question of whether a person has capacity to make a will should be excluded. But the question of whether a person has sufficient mental capacity to know the nature and extent of his property, etc., would be allowed. As Defendant recognizes and as this Court previously held, the satisfaction clause in the Farm and Ranch Contract obligated Defendant to act in good faith in terminating the contract. In determining good faith, the Texas Supreme Court has adopted an objective reasonableness standard for reviewing whether the party made its determination in good faith. Since this question is going to the jury, one can assume that the Defendant intends to offer evidence that it acted in good faith. The real challenge to Mr. Burford's testimony on the issue of good faith is whether his opinion is reliable because, according to Defendant, he did not "analyze the state of Plaintiff's title." But as set forth earlier, Plaintiffs' title to the surface estate is undisputed. The background described above and throughout this Response should be before the jury at the time that Mr. Burford testifies. The challenge to his testimony on the issue of good faith is based solely on the fact that Mr. Burford did not conduct a title examination of Shoe Bar Ranch. This does not make Mr. Burford's

PLAINTIFFS SHOE-BAR RANCH, INC. AND PATSY WARD, AS TRUSTEE OF THE EIDSON TRUST'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE WILLIAM B. BURFORD'S EXPERT REPORT AND TESTIMONY

PAGE 8

testimony on the objections that Defendant did make, and that Mr. Burford has reviewed unreliable. As Mr. Burford's report indicates, he did study the parties' contract, the title insurance commitment, and the correspondence attached as Exhibits 7 through 12 to this Response. These are the documents that inform Defendant's objections and conduct.

## IV. CONCLUSION

Defendant's Motion seeks to exclude three items:

1. the scope and meaning of the contract;

2. whether Preferred's objections identified in the title commitments were "valid objections"; and

3. whether Preferred acted in good faith when it terminated the contract.

The trial testimony of Mr. Burford with properly phrased questions will assist the jury in understanding the dispute and facts in issue. Mr. Burford's opinion should not be excluded simply because he failed to perform an independent evaluation of two undisputed matters – title and whether there are unusual provisions in the severance documents. There are clearly questions that could be asked of Mr. Burford which would be inadmissible, and there questions that can be asked of Mr. Burford which are admissible. Here, Shoe Bar respectfully submits is a case where the Court must call bottles and strikes while the witness is on the stand.

Accordingly, Shoe Bar respectfully requests that the Court deny Defendant's motion to exclude Mr. Burford's testimony and grant Shoe Bar such other further relief to which it may be entitled.

Respectfully submitted,

**DAVIS, GERALD & CREMER**
**A Professional Corporation**
400 W. Illinois, Suite 1400
Midland, Texas 79701
(432) 687-0011
(432) 687-1735 (Fax)

By: */s/ John A. "Jad" Davis*
    John A. "Jad" Davis
    State Bar No. 05511400
    jadavis@dgclaw.com

    Julie L. Griffis
    State Bar No. 24070032
    jlgriffis@dgclaw.com

**ATTORNEYS FOR PLAINTIFFS SHOE BAR RANCH, INC. AND PATSY WARD, AS TRUSTEE OF THE EIDSON TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of September 2018, a copy of the foregoing was served on the following:

| VIA E-SERVICE | VIA E-SERVICE |
|---|---|
| Thomas W. Sankey, P.C. | Harper Estes |
| Wesley W. Yuan | Lisa K. Hooper |
| Duane Morris LLP | Lynch, Chappell & Alsup, P.C. |
| 1330 Post Oak Blvd., Suite 800 | 300 N. Marienfeld, Suite 700 |
| Houston, TX 77056 | Midland, TX 79701 |
| (713) 402-3900 | hestes@lcalawfirm.com |
| (713) 402-3901 (Fax) | lhooper@lcalawfirm.com |
| twsankey@duanemorris.com | |
| wwyuan@duanemorris.com | |

    */s/ John A. "Jad" Davis*
    John A. "Jad" Davis