# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| SHOE-BAR RANCH, INC., & PATSY WARD, as Trustee of the Edison Trust, *Plaintiffs*, | § § § § | |
| v. | § | MO:17-CV-00210-DC |
| PREFERRED PROPPANTS, LLC, *Defendant*. | § § § § | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Preferred Proppants, LLC's Renewed & Supplemental Motion for Summary Judgment. (Doc. 28). After due consideration of Defendant's Motion (Doc. 28), Plaintiffs' Response (Doc. 32), and Defendant's Reply to Plaintiffs' Response (Doc. 35), the Court **GRANTS** Defendant's Renewed & Supplemental Motion for Summary Judgment. (Doc. 28).

### I. BACKGROUND

On or about March 3, 2017, Plaintiffs and Defendant executed a written Farm and Ranch Contract (Contract) whereby Defendant agreed to purchase from Plaintiffs Shoe-Bar Ranch, which constituted approximately 25,572.35 acres. (Doc. 1-1 at 2). Upon the execution of the Contract, Defendant paid earnest money. (Doc. 2 at 6). The Contract contained two termination provisions pertinent to this case—paragraph two[1] of the Amendment to the Contract (Amendment) and paragraph eight of the Special Provisions Addendum (Addendum). (Docs. 32-2 at 14; 32-3 at 2). In relevant part, paragraph two of the Amendment allowed Defendant to object to defects, exceptions, or encumbrances to title disclosed in the Commitment other than

---

1. Paragraph Two of the Amendment to the Farm and Ranch Contract replaced Paragraph 6D of the Farm and Ranch Contract. (Doc. 32-3 at 2).

reservations or exceptions permitted under the Contract. (Doc. 32-3 at 2). Further, Defendant could object to "any exceptions which prohibit the following use or activity: Ranching, Farming, Hunting, Sand Mining, Gravel Mining, Rock Mining." *Id.* Paragraph eight allowed Defendant to terminate the Contract on or before the closing date if it determined Plaintiffs did not have good title and the ability to convey title to the frac sand resources. (Doc. 32-2 at 14).

On or about April 27, 2017, Defendant received the first Title Commitment with several exceptions. (Doc. 28 at 7). Defendant raised objections to the exceptions via a letter sent to Plaintiffs on or about May 26, 2017. *Id.* On June 21, 2017, the parties moved the Contract's closing date to October 1, 2017. (Doc. 32-3 at 2). On several occasions, Defendant's counsel requested that the objections at issue, in relevant part, several unrecorded leases and a 1925 lease that covered a vast majority of the Ranch's acreage, be provided or removed from the first Title Commitment. (Doc. 28 at 7). Plaintiffs subsequently provided a modified Title Commitment which retained many of the same exceptions to which Defendant had previously objected. *Id.* at 9. Defendant once again raised objections to the modified Title Commitment, claiming it could not thoroughly review and analyze the title to the property without the unrecorded oil and gas leases. *Id.* at 9–10. On September 8, 2017, Plaintiffs notified Defendant that its objections were not defects to the title and that such objections could not be removed without a release. *Id.* at 10. Defendant then requested that Plaintiffs resolve its objections either by providing a release that satisfied the title company, executing and delivering "an affidavit of non-production satisfactory to the title company, or waiving lessee's surface rights." *Id.* Plaintiffs provided a second modified Title Commitment on September 21, 2017, that included the same exceptions to title. *Id.* Defendant terminated the Contract via a letter on September 27, 2017, under paragraph two of the Amendment and paragraph eight of the Addendum. *Id.* at 11.

On October 4, 2017, Plaintiffs filed their original petition in the 358th District Court of Ector County, alleging Plaintiffs performed, or were excused from performing, under the Contract. (Doc. 1 Ex. 1 at 3). Plaintiffs argued that Defendant breached the Contract when it terminated and refused to close said Contract. *Id.* Plaintiffs sought specific performance or, in the alternative, "the recovery of monetary damages for the difference in sale price, if any, between the transaction agreed upon in the Real Estate Contract and a future[,] completed transaction." *Id.* Defendant removed the case to this Court October 26, 2017, under 28 U.S.C. §§ 1441(a) and 1446, asserting diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1 at 1–2).

On October 27, 2017, Defendant filed its answer to Plaintiffs' complaint, asserting the affirmative defense of failure of consideration and counterclaims against Plaintiffs. (Doc. 2 at 3–4). Defendant sought a declaratory judgment that Defendant properly terminated the Contract under paragraph eight of the Addendum, that Defendant properly terminated the Contract under paragraph two of the Amendment and that the contract was illusory because Defendant had the right to terminate the contract at its sole discretion and without limitation. *Id.* at 7–8. Defendant also alleged that Plaintiffs breached the Contract by failing to cure objections raised by Defendant under paragraph two of the Amendment. *Id.* at 9. Defendant sought to recover monetary damages in the amount of the money paid by Defendant. *Id.* Plaintiffs filed their answer to Defendant's counterclaims on November 17, 2017, generally denying Defendant's causes of action. (Doc. 7).

On December 7, 2017, Defendant filed a Motion for Summary Judgment. (Doc. 9). In its motion, Defendant alleged that the Contract was illusory and therefore unenforceable as a matter of law, that Defendant provided Plaintiffs with proper notice to terminate the Contract under paragraph eight of the Addendum, and that there is no dispute that Defendant gave Plaintiffs

proper notice to terminate the Contract under paragraph two of the Amendment. (Doc. 9 at 7–12). Plaintiffs filed a Response (Doc. 10) on December 21, 2017, and Defendant filed a Reply (Doc. 12) to Plaintiffs' Response on January 11, 2018. The Court issued its Order on March 20, 2018, denying Defendant's Motion for Summary Judgment. (Doc. 21). In its Order, the Court found that the Contract was not illusory and thus enforceable. *Id.* at 5–16. The Court further held that discovery was required before it could determine whether Defendant's alternative arguments—that Defendant properly terminated the Contract under paragraphs eight and two—were supported by the facts of the case. *Id.* at 16–21. Finally, the Court found that paragraph eight required Defendant to use good faith, in determining whether Plaintiffs possessed good title, and the ability to convey title, to the frac sand resources on the property. *Id.* at 18.

The discovery period closed on August 20, 2018. (Doc. 6). On September 4, 2018, Defendant filed a Renewed & Supplemental Motion for Summary Judgment. (Doc. 28). Defendant argues that because discovery has concluded and there is no genuine issue of material fact, the Court is now able to determine that Defendant properly terminated the Contract under paragraph two of the Amendment and/or paragraph eight of the Addendum. *Id.* at 13–21. Plaintiffs filed their Response on September 18, 2018, generally asserting that issues of material fact exist regarding the termination of the Contract under both provisions. (Doc. 32). Defendant filed a Reply to Plaintiffs' Response on September 25, 2018. (Doc. 35).

## II. LEGAL STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine

4

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.*

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

Defendant argues that there is no genuine issue of material fact regarding whether Defendant raised proper and timely objections under paragraph two of the Amendment and that Plaintiffs failed to cure said objections. (Doc. 28 at 13). Alternatively, Defendant alleges that it utilized its discretion to terminate the Contract under paragraph eight of the Addendum to the Contract in good faith. *Id.* at 17. The Court analyzes Defendant's arguments below.

### A. Whether Defendant—in Good Faith—Terminated the Contract Under Paragraph Eight

Paragraph eight to the Addendum states:

> The obligations of Buyer under this Purchase Agreement are *contingent upon Buyer determining, in its sole discretion, that the Seller has good title to (and the ability to convey to Buyer) the frac sand resources on the Property*. If, on or prior to the closing, Buyer gives notice to Seller of the failure of this contingency, then this Purchase Agreement shall terminate, all earnest money shall be returned to Buyer and neither party shall have any further obligations under this Purchase Agreement.

(Doc. 32-2 at 14). In its March 2018 Order, this Court held that paragraph eight of the Addendum constituted a satisfaction clause. (Doc. 21 at 7–9). The Court determined that "Defendant must have acted in good faith when it terminated the Contract under paragraph eight." *Id.* at 18. Accordingly, Defendant was required to determine, in good faith, "whether Plaintiffs possessed good title, and the ability to convey title, to the frac sand resources on the Ranch." *Id.* at 17. Further, the Court found that discovery was necessary because "whether a party acted in good faith in exercising its termination power is a question of fact." *Id.* at 18 (citing *Commc'ns Transmission, Inc. v. TriStar Commc'ns, Inc.*, 798 F. Supp. 406, 409 (W.D. Tex. Sept. 4, 1992)). The applicable standard is whether a reasonable person would be satisfied with the performance. *TriStar Commc'ns, Inc.*, 798 F. Supp. at 409. Discovery has now concluded, and the facts surrounding Defendant's decision to terminate the Contract are undisputed. (Docs. 28, 32, 35).

Defendant argues that no genuine issue of material fact exists regarding whether it utilized its discretion to terminate the Contract in good faith. (Doc. 28 at 17). Defendant asserts that "numerous oil and gas leases gave dominant rights to the mineral estate owners to use the surface estate." *Id.* Specifically, Defendant points to a 1925 lease that covered a vast majority of

the Ranch's acreage, and which granted "broad rights for the purpose of mining and operating for oil and gas." *Id.* at 18 (citing Ex. F). Defendant argues that Texas law gives mineral owners a broad right to use the surface, which could include the right to use the frac sand resources for the production of oil and gas that Defendant intended to mine. *Id.* Defendant further argues that because some of the mineral leases were not recorded, Defendant was unable to determine the extent and potential effect of the rights of the mineral leaseholders. *Id.* Additionally, Plaintiffs' title to the property "was encumbered by restrictions on access to the Ranch property itself" that unless remedied would have become another exception. *Id.* Finally, Defendant argues that there is no evidence that Defendant acted in bad faith in exercising its right to terminate the Contract under paragraph eight. *Id.* at 19. The Court agrees.

1. *Good Faith Can Be Established as A Matter of Law*

As noted above, Defendant's action of terminating the Contract under paragraph eight must have been executed in good faith. Plaintiffs argue that the issue as phrased by this Court in its March 2018 Order can be rephrased to "whether a reasonable person would be satisfied that [Plaintiffs] legally owned the surface estate," and that the jury should answer such question. (Doc. 32 at 11). However, the question is not whether a reasonable person would be satisfied with Plaintiffs' ownership of the surface estate but whether a reasonable person would be satisfied that Plaintiffs had *good title to and the ability to convey the frac sand resources*. (Doc. 32-2 at 14); *see also Clover Staffing, LLC v. Johnson Controls World Servs., Inc.*, 465 F. Supp. 2d 670, 684 (S.D. Tex. Dec. 6, 2006) (expanding on the standard applicable to a satisfaction clause, and framing the question as follows: "whether a party acted in good faith and was honestly dissatisfied–that is, was objectively reasonable…."). Further, where the facts are undisputed, good faith can be established as a matter of law. *See Joe v. Two Thirty Nine Joint*

*Avenue*, 145 S.W.3d 150, 164–65 (Tex. 2004) (finding that the undisputed facts established as a matter of law that the party acted in good faith); *see also Estate of Nunu*, 542 S.W.3d 67, 81 (Tex. App.—Houston [14th Dist.] 2017, pet. denied), reh'g denied (Dec. 12, 2017) ("Good faith is established as a matter of law if reasonable minds could not differ in concluding from the undisputed facts that the person in question acted in good faith.") (citing *Medina County Com'rs Court v. Integrity Group, Inc.*, 944 S.W.2d 6, 10 (Tex. App.—San Antonio 1996, no writ); *Joe*, 145 S.W.3d at 164–65; *Looper v. Houston Cmty. Coll. Sys.*, 14-07-00040-CV, 2007 WL 4200642, at *7 (Tex. App.—Houston [14th Dist.] Nov. 29, 2007, pet. denied) (mem. op.)).

2. ***"Good Title" Encompasses the Right to Ownership—Right to Use & Prohibit Others from Using—And the Right to Possess***

Plaintiffs also contend that "good title" to the frac sand resources refers solely to ownership, not to the condition or value of the property. (Doc. 32 at 12) (citing *McGonagle v. Stewart Title Guar. Co.*, 432 S.W.3d 535, 540 (Tex. App.—Dallas 2014, pet. denied)). However, Defendant does not object to the condition or value of the frac sand resources. (Doc. 28). Rather, it raises concerns over mineral leaseholders' ability to possess and make use of the frac sand resources for oil and gas production. *Id.* at 18. "Good title" is not defined in the Contract. (Doc. 32-2). "When an agreement does not contain a specific or technical definition of certain terms used therein, those terms should be given their plain, ordinary, and generally accepted meanings." *TriStar Communc'ns, Inc*, 798 F. Supp. at 407 (citing *Gonzalez v. Mission American Insur. Co.*, 795 S.W.2d 734, 736 (Tex. 1990)).

Plaintiffs are correct that "good title" is defined as, "A title that is legally valid or effective." *Good Title*, Black's Law Dictionary (10th ed. 2014). However, Black's Law Dictionary also explains that:

> A good title consists in the *rightful ownership* of the property and in the *rightful possession* thereof, together with the appropriate legal evidence of rightful ownership.

*Id.* (emphasis added) (quoting Chapman W. Maupin, *Marketable Title to Real Estate* 1-2 (2d ed. 1907)). Further, ownership of property consists of several rights, such as "the right to keep others from using the property" and "the right to use the property." *United States v. D.K.G. Appaloosas, Inc.*, 630 F. Supp. 1540, 1560 (E.D. Tex. Feb. 21, 1986), *aff'd,* 829 F.2d 532 (5th Cir. 1987) (citing *Amalgamated Food Emp. Union Local 590 v. Logan Valley Plaza*, 391 U.S. 308, 319 (1968); *Henneford v. Silas Mason Co., Inc.,* 300 U.S. 577, 582 (1937); *United States v. Lutz,* 295 F.2d 736, 740 (5th Cir. 1961)). Accordingly, the Court rejects Plaintiffs' argument that in deciding whether Defendant in good faith determined that Plaintiffs had good title to and the ability to convey the frac sand resources the sole question is whether a reasonable person would find that Plaintiffs had legal ownership of the surface estate. *Id.* Rather, "good title" and the ability to convey the frac sand resources refers to the rightful ownership—the owner's right to use and prohibit others from using, among other rights—and rightful possession of the frac sand resources. *Good Title*, BLACK'S LAW DICTIONARY (10th ed. 2014) (quoting CHAPMAN W. MAUPIN, *Marketable Title to Real Estate* 1-2 (2d ed. 1907)); *see also D.K.G. Appaloosas, Inc.*, 630 F. Supp. at 1560.

### 3. *A Reasonable Person Would Find Defendant's Termination of the Contract Justified*

Plaintiffs at no point dispute the evidence discussed below. (Doc. 32). Rather, they argue that such evidence is not relevant to whether Plaintiffs had good title. *Id.* However, under Texas law, the right to use the frac sand can be affected by whoever owns the mineral estate. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 49 (Tex. 2017) (describing an oil and gas leaseholder's right to develop, including in such description "incidental rights

reasonably necessary for the extraction" of oil and gas). Additionally, Plaintiff's expert agreed that it was possible that mineral leaseholders could make use of the frac sand resources for the production of oil and gas. (Doc. 28-10 at 13). Accordingly, where a Buyer is required to determine whether the Seller's title to frac sand is good and whether the Seller can convey title to frac sand, it is reasonable for the Buyer to verify the extent of the mineral owners' right to possess and make use of the frac sand and the effect of such right. *Id.*

In the instant case, many of the oil and gas leases the surface estate was subject to were unrecorded, meaning Defendant could not verify its contents or the full extent of the rights granted under the unrecorded leases. (Doc. 28 at 17). Further, the 1925 oil and gas lease afforded the mineral owner rights for the "purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, powers, stations and structures thereon to produce, save and take care of said products" in 20,834 acres of the 25,572-acre Ranch. (Docs. 28 at 19; 28-7 at 2). A Buyer seeking good title to the frac sand resources would be wary that a mineral owner's rights to the surface would inhibit the Seller's use and possession—and therefore rightful ownership—of the frac sand, as did Defendant in this case. (Doc. 28 at 19).

Additionally, according to Defendant, Schedule C of the Title Commitment, which required evidence of legal access to the Ranch, raised red flags. (Docs. 28 at 19; 28-22 at 22). Defendant states that if evidence were not "provided prior to closing, lack of legal access to the Ranch would then be listed as another exception on Schedule B of the title policy."[2] *Id.* Having access to property is essential to exercising one's right of ownership and almost always preferred. *Hamrick v. Ward*, 446 S.W.3d 377, 383 (Tex. 2014) (explaining the policy reasons for

---

2. Defendant also raises the argument that as of now, there is no legal access to the Ranch. (Doc. 28 at 19). However, the Court will not entertain such evidence as those were not the conditions of the Ranch at the time Defendant decided to terminate the Contract. *See Clover Staffing, LLC*, 465 F.Supp.2d at 684 (looking at the facts as they were at the time the party terminated the contract).

necessity easements—that is "to avoid the proliferation of landlocked—and therefore, unproductive—parcels of land").

Considering the summary judgment record, the Court concludes Plaintiffs have failed to raise a fact issue as to whether Defendant acted reasonably in determining that Plaintiffs did not have good title or the ability to convey title to the frac sand resources in the Ranch. The uncontroverted evidence reveals that there was a *bona fide basis* for Defendant's dissatisfaction with Plaintiffs' title to the frac sand resources. The record shows that several unrecorded oil and gas leases could affect Plaintiffs' right to use or to prohibit others from using—therefore ownership—and possession, together, good title, to the frac sand resources, which were the subject of the satisfaction clause. (Doc. 28 at 7). Further, Defendant gave Plaintiffs notice of their dissatisfaction with the effect the leases had on Plaintiffs' title to the frac sand resources first via a letter on or about May 26, 2017, and a second time, alerting Plaintiffs it was unable to review and analyze the title to the property without the unrecorded oil and gas leases. *Id.* at 9–10. Plaintiffs responded that they were unable to resolve Defendant's objections. *Id.* Defendant then requested that Plaintiffs either provide a release that satisfied the title company, execute and deliver "an affidavit of non-production satisfactory to the title company, or waiving lessee's surface rights." *Id.* Plaintiffs again were unable to resolve Defendant's objections. *Id.* On September 27, 2017, Defendant exercised its right to terminate the Contract under paragraph eight of the Addendum before the closing date of October 1, 2017, as required by paragraph eight. *Id.* at 11. Therefore, Defendant presented undisputed evidence that it acted reasonably in terminating the Contract after determining that Plaintiffs' title to the frac sand resources was not good and that Plaintiffs could not convey title to the frac sand resources. *Compare Cranetex, Inc. v. Precision Crane & Rigging of Houston, Inc.,* 760 S.W.2d 298, 302 (Tex. App.—Texarkana

1988, writ denied) (holding that dissatisfaction was unreasonable because the record showed "no bona fide basis for dissatisfaction").

Plaintiffs assert that there is a fact issue regarding whether Defendant acted in good faith. (Doc. 32 at 12). Specifically, Plaintiffs allege that Defendant "entered into multiple agreements or letters of intent to purchase or lease frac sand properties in West Texas besides Shoe Bar Ranch," and that Defendant closed on another property that met its needs for sand in the Summer of 2017. *Id.* Further, that Defendant had the intent, from the Contract's inception, to claim Plaintiffs' did not have good title if it wanted to terminate the Contract. *Id.* The Court finds that said assertions fail to create a genuine issue of material fact regarding whether Defendant acted unreasonably in determining that Plaintiffs had good title and the ability to convey title to the frac sand resources. *See Cranetex, Inc. v. Precision Crane & Rigging of Houston, Inc.*, 760 S.W.2d 298, 302 (Tex. App.—Texarkana 1988, writ denied) (applying and explaining the objective standard as it applies to satisfaction clauses). The objective standard "does not seek to find the mental state of satisfaction of [the] party, but rather whether the performance would satisfy a reasonable person," as Plaintiffs acknowledged in their Response. *Id.* Thus, Defendant's mental state, whether it was satisfied with the title, is not relevant to answering whether a reasonable person would be satisfied that Plaintiffs had good title to and the ability to convey title to the frac sand resources. *Id.*

The Court finds that based on the undisputed facts, Defendant's decision to terminate the Contract under paragraph eight of the Addendum was made in good faith, and thus grants summary judgment in favor of Defendant. Accordingly, the Court need not address Defendant's alternative argument for summary judgment.

### B. Defendant's Request for an Oral Hearing

The Court denies Defendant's request for a hearing on its Motion for Summary Judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 28). Accordingly, the Court **DISMISSES** Plaintiffs' claim for breach of contract and **VACATES** the final pretrial conference and trial dates. Further, the Court **DENIES** all pending motions as **MOOT**.

The Court therefore **ORDERS** that Defendant's Motion for Summary Judgment is hereby **GRANTED**. (Doc. 28).

Additionally, the Court **ORDERS** the return of the earnest money paid by Defendant.

The Court further **ORDERS** that Plaintiffs' claim for breach of contract is **DISMISSED WITH PREJUDICE**.

The Court further **ORDERS** that all pending motions are **DENIED** as **MOOT**.

It is so **ORDERED.**

SIGNED this 31st day of October, 2018.

                        DAVID COUNTS
                        UNITED STATES DISTRICT JUDGE